UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

        Plaintiff,

                                    NO.  11-CR-20300

        v.

                                    HON. ARTHUR TARNOW

D-1   FABIOLA CONTRERAS

        Defendant.

_____/

**GOVERNMENT'S SENTENCING MEMORANDUM**

NOW COMES the United States of America, by and through its attorneys,

BARBARA L. MCQUADE, United States Attorney, and JENNIFER L. BLACKWELL,

Assistant United States Attorney, both for the Eastern District of Michigan, Southern

Division, and respectfully submits this Sentencing Memorandum regarding defendant

FABIOLA CONTRERAS, who is scheduled to be sentenced on **August 9, 2011, at 2:30**

**p.m.**  For the reasons provided below, the United States recommends a term of probation.

**BACKGROUND**

On July 21, 2011, defendant FABIOLA CONTRERAS was arrested on a federal

criminal complaint, charging her conspiracy to commit with money laundering in

violation of Title 18, United States Code, Section 1956(h).  Her arrest occurred the same

day as her co-conspirators, including Gregory Carr,  who had been indicted by a federal

grand jury in the Eastern District of Michigan, for violations of Title 18, United States

Code, Section 2422(a), enticement/persuasion of another person to travel in interstate or

foreign commerce to engage in acts of prostitution, Title 18, United States Code, Section

371, conspiracy to entice/persuade another person to travel in interstate or foreign

commerce to engage in prostitution, and Title 18, United States Code, Section 1956(h),

conspiracy to engage in money laundering.  Contreras was indicted on a superseding

indictment on October 6, 2010.  Contreras pled guilty to an information, charging her

with a one count misdemeanor of aiding and abetting in the pattern and practice of

continued employment of unauthorized aliens.

## FACTS

Beginning in approximately 2001, Gregory Carr and Laurie Carr operated a

prostitution business under the guise of an escort service known as "Miami Companions"

based in the Miami, Florida area, through which the Carrs marketed women to perform

prostitution – that is, sexual acts with customers (hereinafter "johns") in exchange for

money – in various cities, including the Detroit, Michigan area.

Gregory Carr was primarily responsible for hiring the women who worked for the

organization.  Some of the women hired by Gregory Carr over the course of the Miami

Companions business to work for the organization were unauthorized aliens.

Fabiola Contreras started working as a prostitute for the organization in 2008. She made at least one trip to Michigan, where she exchanged sex for money.  She began a relationship with Gregory Carr in 2009, and they began living together in November 2009.

In 2010, she participated in the Miami Companions organization by using her bank accounts to launder proceeds for the business. Starting in February 2010, all of the deposits for the company went to her bank account, and she paid the expenses from her account for the business,.  In addition, in February 2010, Gregory Carr closed out his bank account for MC Consulting Associates by transferring the remainder ($20,000) into her account, from which she then wrote a check to a family member for the same amount.

Fabiola Contreras knew that some of the women working for Gregory Carr and Miami Companions were unauthorized aliens, and, at times, aided and abetted in the concealment of their unauthorized status and continued employment with Gregory Carr and the Miami Companions organization, from approximately February 2010 until July 2010.

## SENTENCING GUIDELINE CALCULATION

The sentencing guidelines are not applicable to this offense, because it is a Class B misdemeanor.  *See* U.S.S.G. § 1B1.9.

**ARGUMENT**

Congress has provided, through 18 U.S.C. § 3553(a), the relevant objectives and factors to be considered by sentencing courts in imposing a "sentence sufficient, but not greater than necessary."  Those factors are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation, and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution.

A.     Advisory Guideline Range

In *Rita v. United States*, 127 S. Ct. 2456 (2007), the Supreme Court restated that the goals of the United States Sentencing Commission in formulating the Sentencing Guidelines are to carry out the objectives of 18 U.S.C. §3553(a).  Despite being advisory, rather than mandatory, the Guidelines remain an important factor in fashioning a just sentence.  As the Supreme Court stated, "[i]t is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve §3553(a)'s objectives." *Id*. at 2464-65.  Even after *United States v. Booker*, 543 U.S. 220 (2005), district courts remain obligated to consult and accurately calculate the guideline range in

each case.  *See Booker*, 543 U.S. at 264 (noting that the "district courts, while not bound to apply the guidelines, must consult those Guidelines and take them into account when sentencing").

B.      Sentencing Factors Pursuant to 18 U.S.C. § 3553

Once this Court arrives at the calculated guideline range for the defendant, which encompasses the base offense level as well as the enhancements, the Court must then consider the factors in § 3553, as discussed above,  in exercising its post-*Booker* discretion.  The goal of this provision is to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a).  The purposes of sentencing as set forth in section 3553(a)(2) are:

"(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

C.      Analysis of § 3553 Factors

An analysis of the sentencing factors pursuant to 18 U.S.C. § 3553 indicates that the defendant merits a sentence of  **probation.**

1. *Nature and Circumstances of the Offense*

First, the defendant's crimes are not insignificant. Over the course of at least one years, the defendant assisted in the operation of a prostitution agency which sent women to the Detroit, Michigan area. In addition to assisting through laundering funds for the business, she aided and abetted in the pattern and practice of employment of unauthorized aliens for the organization. Her involvement merits some form of punishment.

2. *Characteristics of Defendant*

The defendant has not had a prior felony conviction. The defendant was essentially brought into the business by Gregory Carr, her boyfriend, but became a willing co-conspirator for a short period of time, until the time of her arrest.

3. *Deterrence to Criminal Conduct*

"Escort" agencies exist to profit from the women who travel across interstate lines in order to prostitute on their behalf. A sentence of at least probation would deter lower-level persons who may be tempted to assist in such organizations in the hopes of securing additional, illicit income

4. *Types of Sentences Available/Sentencing Guidelines*

There is no applicable guideline range. The crime to which Contreras pled is a misdemeanor capable of a term of imprisonment of up to 6 months. Probation and location monitoring are acceptable alternatives to a term of imprisonment.

5.      *Disparities Among Other Defendants*

Nayubet Swaso, one of the co-defendants in this conspiracy who assisted with the

money laundering and operating the call center overseas, received a sentence of

probation.  Gregory Carr, the organizer and owner of the business, received a sentence of

14-months imprisonment.  Michelle Matarazzo and Laurie Carr received a sentence of

time served.  A sentence of probation would be commensurate with the other co-

defendants in this conspiracy.

## CONCLUSION

In conclusion, the defendant should receive a sentence of **probation**.

Respectfully submitted,

BARBARA L. MCQUADE
UNITED STATES ATTORNEY

s/ JENNIFER L. BLACKWELL
JENNIFER L. BLACKWELL
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan  48226
(313) 226-9165

Dated: August 2, 2011                         jennifer.blackwell3@usdoj.gov